NUNC PRO TUNC
May 9, 2018

**FILED**

Mar 20, 2019

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ s/ stevem _____ DEPUTY

# TABLE OF CONTENTS

CHULA VISTA, CA 91912 .............................................................................................7

Plaintiff In *Propria Persona* ....................................................................................7

UNITED STATES DISTRICT COURT .........................................................................7

FOR THE SOUTHERN DISTRICT OF CALIFORNIA .................................................7

1. IBRAHIM NASSER d/b/a SERIOUS SCENTS.......................................................7

2. THIS IS AN ONGOING LEGAL CONFLICT OVER GRENADE AIR FRESHNER:. Error! Bookmark not defined.

3. NO ONE WANTS TO BE TOLD THAT THEY MADE A MISTAKE MOST OF ALL THE BILLIONDOLLAR DEFENDANT ENERGIZER:.........................................................................................8

4. NO ONE WANTS TO ADMIT A MISTAKE EVER..................................................8

5. EXPOSING A MISTAKE AND FRAUD WHICH INVOLVES MILLIONS OF DOLLARS CHANGING HANDS: ...9

6. MR. NASSER ENJOYS 1ST USE RIGHTS WHICH IS REINFORCED BY THE LEGAL BLESSING OF HAVING AND HOLDING A TRADEMARK FOR GRENADE AIR FRESHNER: .........................................................................................................9

7. THIS COURT HAS BEEN BOMBARDED BY DEFENDANT ENERGIZER: ...................................9

8. TO EXPOSE THE FALSE CLAIM OF NO CAUSE OF ACTION AND UNTELLABLE CLAIMS OF ENERGIZER'S ATTORNEYS:.........................................................................................................9

9. NO ONE HAS ANY WISH OR DESIRE TO CAUSE A MUCH-NEEDED CORRECTION OF A MISTAKE BECAUSE IT AMPLIFIES THE MISTAKE. Most of all the defendants in the case at bar.........................................................................................................10

10. BACKGROUND & FACTS OF THE CASE. ........................................................10

11. PLAINTIFF NASSERS HAND GRENADE AIR FRESHNER PRODUCTS HAVE BEEN IN CONTINUOUS COMMERCIAL USE SINCE 1993 FOR 25 PLUS YEARS. .......................................................10

12. THE TRADEMARK EXAMINER IN HIS CONCLUSION: ........................................11

13. SINCE THE HAND GRENADE AIR FRESHNER PRODUCTS OF THE PARTIES CREATE THE SAME GENERAL OVERALL COMMERCIAL IMPRESSION................................................11

14. IT WAS AMERICAN COVERS INC. WHO ILLEGALLY TOOK PLAINTIFF NASSER PRODUCTS AND DESIGNS WITH THE INTENT OF CAUSING CONFUSION IN THE MARKET PLACE ....................................11

15. DEFENDANT ENERGIZER WILL NO DOUBT CLAIM TO THIS COURT: ....................................11

16. PLAINTIFF NASSER FOLLOWING CIVIL ACTION IN UTAH................................................13

   • BECAUSE OF LIMITED LEGAL RESOURCES PLAINTIFF NASSER ................................13

17. EXAMINER WAS CORRECT IN PART AMERICAN COVERS INC. AND MY FIRST USE HAND GRENADE IMAGE AND DESIGN AND TRADEMARKED DESIGN DO SHARE THE SAME TRADE CHANNELS. .............13

18. THE TRADEMARK EXAMINER WAS & IS CORRECT: ................................................13

19. THE ADMITTED POSSIBILITY OF CONFUSION BY THE TRADEMARK EXAMINER PLAINTIFF NASSER'S 1ST Use rights ................................................................................13

20. THE PRESENT FEDERAL TRIER OF FACT IS INVESTED WITH THE LEGAL POWER ..............14

21. WHEN THE FACT OF FIRST USE AND FIRST TO FILE A TRADEMARK, COPYRIGHT PRIVILEGES ARE COMBINED WITH 25 YEARS OF ONGOING COMMERCIAL SALE AND PRODUCTION. ..........................14

22. PLAINTIFF NASSER AND SERIOUS SCENTS A SOLE PROPRIETORSHIP SATISFIED:.........................14

23. IT SHOULD BE NOTED:................................................................................15

24. THOSE TWO AIR FRESHER COMPANIES ........................................................15

25. THIS IN LEGAL FORM AND AFFECT AMOUNTED TO A COORDINATED LEGAL FRONTAL ASSAULT UPON PLAINTIFF NASSER AND SERIOUS SCENTS LIMITED RESOURCES. ........................................15

26. PLAINTIFF NASSER'S ABILITY TO FIGHT MULTIPLE LEGAL ASSAULTS UPON HIS BUSINESS: ............15

27. THE PROBLEM: ................................................................................16

28. THIS POSITION WAS BAD LEGAL ADVICE WHICH PROVED TO BE ABSOLUTELY INCORRECT. ..........16

29. IT IS A WELL SETTLED IN LAW IN FACT THAT ATTORNEYS MUST HAVE THE ABILITY TO CONTROL A CASE AND ITS OUTPUT AND OPERATION IBRAHIM AND SERIOUS SCENTS. ........................................16

30. PLAINTIFF NASSER'S LEGAL POSITION IS SUPPORTED BY TWO PESOS, INC. V. TACO CABANA, INC., ...................................................................................................................................17

31. OF A RESTAURANT (THE GRENADE AIR FRESHENER PLAINTIFF NASSER AND SERIOUS SCENTS ......17

32. THE TRADE DRESS HAS NOT ACQUIRED A SECONDARY MEANING .................................................17

33. (THE AIR FRESHENER MARKET) .......................................................................................................17

34. LETTER OF PROTEST MEMORANDUM Dated May 30, 2014. IN SO HOLDING, THE COURT: Followed precedent in the Fifth Circuit. In Chevron Chemical Co. V. Voluntary Purchasing Groups, Inc., 659 F. 2d 695, 702 (CA5 1981), The court noted that trademark law requires a demonstration of secondary meaning Only when the claimed trademark is not sufficiently distinctive of itself to identify the producer; ..............................................................................................................................................18

35. THE COURT HELD THAT THE SAME PRINCIPLES SHOULD APPLY TO PROTECTION OF TRADE DRESSES ......................................................................................................................................................18

. The Court of Appeals noted that this approach conflicts with decisions of other courts, particularly the holding of the Court of Appeals for the Second Circuit in Vibrant Sales, Inc. v. New Body Boutique, Inc., 652 F. 2d 299 (1981), cert. denied, 455 U. S. 909 (1982), that § 43(a) protects unregistered trademarks or designs only where secondary meaning is shown. SEE Chevron, at 702. The Court Granted Certiorari ...........................................................18

36. THE LANHAM ACT [7] WAS INTENDED TO MAKE" ACTIONABLE THE DECEPTIVE AND MISLEADING USE OF MARKS..................................................................................................................................18

37. SECTION 43(A) "PROHIBITS A BROADER RANGE OF PRACTICES THAN DOES...................................18

38. THIS IS COMMON LEGAL GROUND THAT § 43(A) PROTECTS QUALIFYING UNREGISTERED TRADEMARKS ...................................................................................................................................18

39. A TRADEMARK IS DEFINED IN 15 U. S. C. § 1127 AS INCLUDING IN ORDER TO BE REGISTERED:......19

40. A MARK MUST BE CAPABLE OF DISTINGUISHING THE APPLICANT'S GOODS FROM THOSE OF OTHERS. § 1052..................................................................................................................................19

41. MARKS ARE OFTEN CLASSIFIED IN CATEGORIES OF GENERALLY INCREASING DISTINCTIVENESS; ...19

43. ALL OF THE REQUIRED LEGAL ELEMENTS ARE FOUND IN PLAINTIFF NASSER'S GRENADE AIR FRESHENER LEGALLY NECESSARY TRAITS..................................................................20

44. THE COURT OF APPEALS FOLLOWED THIS CLASSIFICATION AND PETITIONER ACCEPTS IT. .............21

46. HOWEVER, DESCRIPTIVE MARKS MAY ACQUIRE THE DISTINCTIVENESS, WHICH WILL ALLOW THEM TO BE PROTECTED UNDER THE ACT. SECTION 2 OF THE LANHAM ACT: ..............................................21

47. THE GENERAL RULE REGARDING DISTINCTIVENESS IS CLEAR: AN IDENTIFYING MARK IS DISTINCTIVE AND CAPABLE OF BEING PROTECTED IF IT EITHER................................................................21

   (1) is Inherently Distinctive..............................................................................21

48. IT IS, OF COURSE, ALSO UNDISPUTED THAT LIABILITY UNDER § 43(A) REQUIRES PROOF OF THE LIKELIHOOD OF CONFUSION. ...................................................................................22

49. THE COURT OF APPEALS, FOLLOWING ITS PRIOR DECISION IN CHEVRON, HELD THAT TACO CABANA'S INHERENTLY DISTINCTIVE TRADE DRESS WAS ENTITLED TO PROTECTION DESPITE THE LACK OF PROOF OF SECONDARY MEANING. .............................................................................22

50. AMERICAN COVERS INC. TRADEMARK WAS GIVEN IN DIRECT VIOLATION OF THE LAW AND TRADE DRESS HELD BY: .....................................................................................................23

51. PENDING CIVIL PROCEEDING:...........................................................................23

52. THE USPTO WILL PERIODICALLY CONDUCT A STATUS CHECK OF THE APPLICATION TO DETERMINE WHETHER SUSPENSION REMAINS ...................................................................................23

53. SERIOUS SCENTS & MR. NASSER NOW BRINGS A COMPLAINT ......................................23

54. THE CRITICAL ISSUES IN THIS CASE ARE:................................................................24

55. US. COPYRIGHT OFFICE OF UNITED STATES # VA 619 -296 ..........................................24

57. THE COURT IS NEXT ASKED TO LOOK TO WHETHER SERIOUS SCENTS, INC / MR NASSER TRADEMARK ARE PROTECTABLE EITHER THROUGH INHERENT OR ACQUIRED DISTINCTIVENESS.........24

58. MR. NASSER'S LAZAR LIKE FOCUS AND INTENT OF TO DEFINE FOR ANY VIEWER OF THE WHO WHAT, WHERE OF HIS BUSINESS OPERATION IS. ........................................................25

59. AN EXAMINATION OF THE MR NASSER'S GRENADE MARK EXPLAINS EACH ELEMENT: .................25

60. THE NASSER'S STATUS AS A THE SENIOR CREATOR AND USER OF THE GRENADE TRADEMARK. .....25

61. PROTECTABILITY OF THE MARK:..........................................................................................25

62. SUGGESTIVE AND ARBITRARY OR FANCIFUL ........................................................................26

63. IT IS UPON THIS WELL-DEFINED LEGAL BACKGROUND AMERICAN COVERS INC. WAS MISTAKENLY SUPPORTED BY AN ERROR AT TTBA.............................................................................................26

64. MR. NASSER'S REGISTRATION OF THE APPLIED-FOR MARK CANNOT AND SHOULD NOT BE REFUSED .............................................................................................................................26

65. AMERICAN COVERS INC. TRADEMARK IS CONTINUOUSLY IN VIOLATION OF THE TRADEMARK LAW: by......................................................................................................................................26

66. A DETERMINATION OF LIKELIHOOD OF CONFUSION:.............................................................27

67. NOT ALL THE DU PONT FACTORS, HOWEVER, ARE NECESSARILY RELEVANT OR OF EQUAL WEIGHT, .........................................................................................................................................27

68. IN THIS CASE, THE FOLLOWING FACTORS ARE THE MOST RELEVANT:.......................................27

69. IN ANY LIKELIHOOD OF CONFUSION DETERMINATION, ..........................................................27

70. ADDITIONALLY, THE GOODS AND/OR SERVICES ARE COMPARED TO; ......................................28

71. HERE, THE MARKS OF MR. NASSER AND AMERICAN COVERS INC. TRADEMARK .........................28

72. NEXT AT ISSUE IS THE MATTER OF ADDRESSING THE GOODS WHICH ARE HIGHLYRELATED IS NOT IN DEBATE BECAUSE: .......................................................................................................28

73. THUS, THERE IS EVIDENCE WHICH MOVES FAR BEYOND THE MORE GENERAL LIKELIHOOD OF A STRONG OF CONFUSION ........................................................................................................28

74. PENDING CIVIL PROCEEDING (S):.........................................................................................29

75. BECAUSE THE CIVIL PROCEEDING (S) PERTAINS TO AN ISSUE THAT COULD DIRECTLY AFFECT WHETHER APPLICANT'S MARK CAN BE REGISTERED..................................................................29

76. NOTICE AND REQUEST FOR ACOURT ACTION & CORRECTION .................................................29

THE TRADEMARK EXAMINER: while well-meaning has misinterpreted and misapplied the pending...29

77. THIS REQUEST FOR ADMINISTRATIVE ACTION IS NECESSITY BASED UPON THE FOLLOWING LAW, WHICH IS CONTROLLING:.......................................................................................................29

78. DISCUSSION OF HISTORY OF PRIOR PENDING APPLICATION ..........................................30

79. THE LAW CONTINUES TO EXPRESS THE NECESSITY OF CARE IN GRANTING PENDING APPLICATIONS. ...........................................................................................................................30

80. PRIORITY AMONG CONFLICTING PENDING APPLICATIONS ............................................30

81. THIS IS FURTHER LEGALLY AMPLIFIED BY THE FOLLOWING:...........................................31

82. A SEARCH OF THE RECORDS CONDUCTED REVEALED THAT U.S. APPLICATION NO. .......................31

83. THERE IS THE UNDISPUTABLE LIKELIHOOD OF MARKET CONFUSION WHEN USING THE REASONABLE PERSON STANDARD BETWEEN THESE MARKS: ..............................................31

84. IN CONCLUSION: ...................................................................................................................32

85. VERIFICATION OF PLEADING: ..............................................................................................32

IBRAHIM NASSER
P.O. Box 5626
CHULA VISTA, CA 91912

Plaintiff In *Propria Persona*

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF CALIFORNIA

IBRAHIM NASSER d/b/a SERIOUS
SCENTS (collectively and professionally
known as "LITTLE GRENADE").

                    Plaintiff,

                    Vs.

JULIUS SÄMANN, LTD; CAR FRESHNER
CO.; and ENERGIZER BRANDS II LLC;
AMERICAN COVERS INC. (collectively,
"Defendants"), alleges as follows:

                    Defendants,
Does 1-100

Case No.: 3-17-CV-00863 BTM (MDD)

RESPONSES TO:
1.  Supplemental Pleading

1. IBRAHIM NASSER d/b/a SERIOUS SCENTS (collectively and professionally known
as "LITTLE GRENADE"). had and held prior Application of Grenade 23.03.09 –
Grenades Serial Number 85641084 Filing Date June 1, 2012

The following is a verified statement which is addition to the Federal Complaint for the supplementing causes of action previously filed and made under the penalty of perjury and is presented to the court that the facts of the case in support of necessary relief of terminating Energizers / American Covers Inc. continued use of a Grenade air freshener is required because of administrative error of the Trademark Board. The mistake in issuing the Trademark was no fault of Mr. Nasser. Nor did Mr. Nasser sit on his rights or wave his legal rights and claims to the exclusive use and control of a Grenade Air Freshener.

2. THIS IS AN ONGOING LEGAL CONFLICT OVER GRENADE AIR FRESHENER: which has a long history of unproductive legal struggles which demands by the court correction of a trademark examiner's mistake. Let us first address the first real issue, which needs exposure when bringing such a claim to any legal authority.

3. NO ONE WANTS TO BE TOLD THAT THEY MADE A MISTAKE MOST OF ALL THE BILLIONDOLLAR DEFENDANT ENERGIZER: who bought American Covers Inc. Defendant Energizer continues the disputed matter unabated while creating and marketing new Grenade Air Freshner which in the past and present are sold in unknown quantities producing, unknown reasonable assumed enormous income and great profits. These profits rightfully are the property of Plaintiff Nasser and are the product of Trademark thief and infringement along with a host of other violations defined herein.

4. NO ONE WANTS TO ADMIT A MISTAKE EVER. Most of all American Covers Inc. Defendant Energizer who bought American Covers Inc. for millions of dollars. It cannot rationally be claimed, or sustained that Defendant Energizer who spent millions on buying American Covers Inc.  and the illegally obtained Grenade Air Freshner which Defendant Energizer and American Covers Inc. knew or should have known was in an ongoing dispute which belongs to Plaintiff Nasser.

**5. EXPOSING A MISTAKE AND FRAUD WHICH INVOLVES MILLIONS OF DOLLARS CHANGING HANDS:**

Money paid by Defendant Energizer for the purchase of American Covers Inc. illegal use and exploitation of the Trademark of another naturally makes people like Defendant Energizer who spent millions on buying American Covers Inc. feel very upset. This because they bought not only a disputed illegally used trademark.  Defendant Energizer who has the legal wherewithal knew or should have known they have no legal right to buy, produce, or mass-market Plaintiff Nasser's Grenade Air Freshener.

**6. MR. NASSER ENJOYS 1ST USE RIGHTS WHICH IS REINFORCED BY THE LEGAL BLESSING OF HAVING AND HOLDING A TRADEMARK FOR GRENADE AIR FRESHNER:**

which gives Plaintiff Nasser exclusive rights and use of that Trademark. Defendant Energizer through their extensive mass marketing channels have turned their vast economic and legal clout by their automatic protectionist defense mode. Defendant Energizer hopes to find some legal rational legal means to pass the mistake on to Plaintiff Nasser while denying him his 1st use rights and the right to have hold, control and profit from his trademark creation.

**7. THIS COURT HAS BEEN BOMBARDED BY DEFENDANT ENERGIZER:**

Who has employed maximum legal effort at great legal expense using it legal and financial clout claiming and promoting outrageous false claims against Plaintiff Nasser. Defendant Energizer, falsely claims Plaintiff Nasser complaint is untellable, no cause of action existing. Defendant Energizer falsely claimed jurisdiction was in Missouri where Plaintiff never had any legal presence or business. The Missouri Federal Court agreed that Plaintiff Nasser jurisdiction was with United States District Court For The Southern District Of California.

**8. TO EXPOSE THE FALSE CLAIM OF NO CAUSE OF ACTION AND UNTELLABLE CLAIMS OF ENERGIZER'S ATTORNEYS:**

Plaintiff Nasser amended his complaint which mirrored Defendant Energizer's Missouri Complaint. Just as expected the mirrored complaint from Missouri was declared by

9

Defendant Energizer in United States District Court For The Southern District Of California which it was filed as having no cause of action and making claims that the mirrored complaint was untellable and could not sustain a cause of action. Meaning the mirrored Defendant Energizer's Missouri Complaint was and is invalid. This is but one example of the frivolous nature of the Defendant Energizer's activities. Without a doubt Defendant Energizer's attorney will find grievous fault with this claim, most noteworthy of these anticipated objections will be a great outburst of moral indignation. This clearly establishes the Plaintiffs claims do have merit.

9. NO ONE HAS ANY WISH OR DESIRE TO CAUSE A MUCH-NEEDED CORRECTION OF A MISTAKE BECAUSE IT AMPLIFIES THE MISTAKE. Most of all the defendants in the case at bar.

10. BACKGROUND & FACTS OF THE CASE.
In 1993 Plaintiff Nasser who is a graphic designer and artist was a newly minted immigrant from war torn Lebanon. Plaintiff Nasser had the burning desire to take the hateful images and painful killing nature of one of the most hatful and hurtful indiscriminate killing tools of all wars the hand grenade and change its nature. Plaintiff Nasser wanted that image to tell the world that change and peace was possible. Plaintiff Nasser made making change from hate and hurt of war possible by not avoid the tools of war like the hand grenade.  Plaintiff Nasser:" We must embrace the hand grenade and make the image of the hand grenade playful, make the hand grenade utilitarian object to solve an existing problem." Plaintiff Nasser was the first person ever to take the grenade dress it up in bright colors and turn it into an air freshener and invest it the words Amor love.

11. PLAINTIFF NASSERS HAND GRENADE AIR FRESHNER PRODUCTS HAVE BEEN IN CONTINUOUS COMMERCIAL USE SINCE 1993 FOR 25 PLUS YEARS. The Defendant Energizer's to usurp the Trademark Laws. Plaintiff Nasser bringing a valid proper claim to the exclusive rights and use of the Hand Grenade Image and

design for which he holds first use rights and title, exclusive ownership and copyright and trademark protections.

12. THE TRADEMARK EXAMINER IN HIS CONCLUSION:
January 19, 2016 which illegal extinguished Mr. Nasser exclusive rights of first use and my right to continuous use of the Trade Dress of the Hand Grenade Image and design in the air fresher and fragrance markets.

13. SINCE THE HAND GRENADE AIR FRESHNER PRODUCTS OF THE PARTIES CREATE THE SAME GENERAL OVERALL COMMERCIAL IMPRESSION and
• The goods of the parties are related and
• Share the same trade channels,
• There is a likelihood of confusion between the marks.
• The continued registration of Hand Grenade Air Freshener Products of Defendant Energizer.
• Defendant Energizer Spent millions on buying American Covers Inc.

14. IT WAS AMERICAN COVERS INC. WHO ILLEGALLY TOOK PLAINTIFF NASSER PRODUCTS AND DESIGNS WITH THE INTENT OF CAUSING CONFUSION IN THE MARKET PLACE
American Covers Inc. diluted Plaintiff Nasser rights of title, ownership, control while denying Plaintiff the proceeds of all sales. Now Defendant Energizer is attempting to carry on with this Trademark infringement with total disregard of Plaintiff Nasser's legal rights while enjoying unjust enrichment at his expense.

15. DEFENDANT ENERGIZER WILL NO DOUBT CLAIM TO THIS COURT: and to Plaintiff Nasser we don't give a damn about 1st use rights, or the existing Plaintiff Nasser's trade dress, trademark, or copyright of plaintiff Nasser has and holds for the past 25 years on the grenade air freshener which predates Defendant Energizer ownership and illegal use of grenade air freshener. This is not a frivolous claim as Defendant Energizer has just marketed a new grenade air freshener **Please See exhibit # 1** and comparison of plaintiff's grenade air freshener and Defendants grenade

air freshener the resemblance is undeniable as is the confusion in the market place and trade mark infringement.

• American Covers Inc.  made the first original thief of Plaintiff Nasser's trade dress, trademark, copyright. This mega corporation is playing this court and the trier of fact for a fool as they go on into the night with claim after claim of procedural violation while being ever artful legal dodger, by employing legal sleight of hand while attempting to deny this case and cause of action being herd on its merits. The facts of the case speak for themselves.

• "Res Ipsa Loquitur" is the perfect Latin phrase which fits this case perfectly because "the thing speaks for itself." The Facts cannot be changed Plaintiff has all of the necessary fundamental legal building blocks which defeat any and all claims of Defendant Energizer and American Covers Inc.

• Defendant Energizer made a bad deal in buying American Covers Inc. and the illusionary legal rights to a trademark Grenade Air Freshener Products from American Covers Inc. who can't sustain any rightful ownership or control of The Hand Grenade Air Freshener Products.

• THE NEXT EXPECTED DEFENSE FROM DEFENDANT ENERGIZER will be they have committed no wrong all they did is purchase American Covers Inc. and their rights and title to Grenade Air Freshener Products. Defendant Energizer will claim they come to this court with clean hands and have only proceeded with marking a legal Trademark product and design for which they paid a high price for.

• Defendant Energizer will no doubt attempt to claim that Plaintiff Nasser sat on his legal rights and waived dominion and control over and in Grenade Air Freshener Products. This claim is being addressed before it is even brought by Defendant Energizer.

• Defendant Energizer upon buying American Covers Inc. lawyer wrote to Plaintiff Nasser requesting that he in so many words not take action on past Trademark infringements. **Please see Exhibit # 2**

• The Plaintiff Nasser did respond to American Covers Inc. Trademark Claims in the Utah Civil Court. Plaintiff Nasser prevailed in that case thus establishing his legal rights and legal priority over American Covers Inc. Once again reaffirming Plaintiffs Trademark Rights **Please see Exhibit # 3**

16. PLAINTIFF NASSER FOLLOWING CIVIL ACTION IN UTAH was followed by repeated cease and desist demands on American Covers Inc. American Covers Inc.

• PLAINTIFF NASSER IS INFORMED AND BELIEVES that is was not coincidental that Little Tree Air Freshener brought a frivolous Trademark infringement case against Plaintiff Nasser.

• BEING A SMALL COMPANY PLAINTIFF NASSER WAS FACED WITH THE NEED TO DEFEND the Little Tree Trademark Action for infringement which lasted 4+ year in which he prevailed.

• BECAUSE OF LIMITED LEGAL RESOURCES PLAINTIFF NASSER did not have the means to bring an action in the Federal Court and to defend an on-going action with Little Tree Air Freshener at the same moment in time.

• THE REAL POSSIBILITY EXISTS THAT LITTLE TREE AIR FRESHENER AND AMERICAN COVERS INC. worked together against Plaintiff Nasser. It is this legal possibility that made it necessary to bring an action against Little Tree and American Covers Inc. new owner Defendant Energizer.

• BY AND THROUGH THE PROCESS OF DISCOVERY IT MAY BE POSSIBLE TO ESTABLISH A LEGAL NEXUS between these two defendants to prove up their possible collusion in their joint attack upon Plaintiff Nasser.

17. EXAMINER WAS CORRECT IN PART AMERICAN COVERS INC. AND MY FIRST USE HAND GRENADE IMAGE AND DESIGN AND TRADEMARKED DESIGN DO SHARE THE SAME TRADE CHANNELS.
This is because the Trademark examiner was wrongful given to American Covers Inc. who operates in the market place as Driven by Refresh AKA Handstands. The Federal Court has the legal authority to correct the mistake of the trademark board and its examiner.

18. THE TRADEMARK EXAMINER WAS & IS CORRECT:
There Is A Likelihood of Confusion Between The Marks Of My Hand Grenade Image and Design And Trademark and Those Of Driven / American Covers Inc. not to issue.

19. THE ADMITTED POSSIBILITY OF CONFUSION BY THE TRADEMARK

EXAMINER PLAINTIFF NASSER'S 1ST Use rights, 1st rights copyright and Trademark should have prevented was created by the Trademark Examiner granting American covers Inc. AKA Driven by refresh the right to infringe on my products, which had and continue in commercial use since 1993 to the present date, which is 25 years or more. The examiner ignored all protest of Plaintiff Nasser complaints and letters of protest that went un-heard, unread, and responded to for over two straight years against American Covers, Inc. applied for their Application.

20. THE PRESENT FEDERAL TRIER OF FACT IS INVESTED WITH THE LEGAL POWER
 to over rules and set aside any Trademark Board decisions. The Federal Court can cause the correction of the confusion in the market place by resending is approval to American covers Inc. AKA Driven by Refresh AKA Handstands. This is the right and correct legal course of action that is required to correct this legal equity.


21. WHEN THE FACT OF FIRST USE AND FIRST TO FILE A TRADEMARK, COPYRIGHT PRIVILEGES ARE COMBINED WITH 25 YEARS OF ONGOING COMMERCIAL SALE AND PRODUCTION.
The legal right to exclusive use right, dominion and control and trade dress of the grenade air freshener products belong exclusively to Plaintiff Nasser. The exclusive rights to the trade dress grenade air freshener products cannot be extinguished by an administrative mistake, or failure to respond in timely manner, or the outright refusal to even consider my ongoing rights establishes by first use and owning the trade dress are legally fixed by 1st use rights.

22. PLAINTIFF NASSER AND SERIOUS SCENTS A SOLE PROPRIETORSHIP SATISFIED:
 the requirement of Trademark Application Serial Number 85641084 which was filed with the trademark board on June 1, 2012 long before American Covers Inc. U.S. Registration No. 4890647 filed on January 15, 2013 Serious Scents. American Covers Inc. did copy Ibrahim and Serious Scents. Trade Dress of Dec 8,1993 US. Copyright Office of United States # VA 619-296 by refusing to deny the unlawful competitor

American Covers Inc. to proceed with the application which violated IBRAHIM and SERIOUS SCENTS. exclusive 1st use of the Grenade Air Freshener which must compete in very highly completive market in the same marketing channels guaranteeing confusion between American Covers Inc. Grenade Air Freshener and plaintiff Nasser's Grenade Air Freshener

23. IT SHOULD BE NOTED:  Plaintiffs direct competitor American Covers Inc. and the Little Tree Air Freshener Co. Both filed actions with the Trademark Board against Plaintiff Nasser. Once again Plaintiff Nasser does not believe this joint filing defies the chances of mathematical probability of two different air freshener companies file a complaint against Plaintiff Nasser.

24. THOSE TWO AIR FRESHER COMPANIES
• Little Tree Air Freshener Opposition No. 91210658 Serial No.: 85641084 and
• American Covers Inc. U.S. Registration No. 4890647 filed on January 15, 2013 Filed for Grenade Air Freshener Trademark.

25. THIS IN LEGAL FORM AND AFFECT AMOUNTED TO A COORDINATED LEGAL FRONTAL ASSAULT UPON PLAINTIFF NASSER AND SERIOUS SCENTS LIMITED RESOURCES.
 Little Tree Air Freshener Co. and American Covers, Inc. competitors. As sated before It is a mathematical impossibility for these two separate business entities to both file action, which harmed Plaintiff Nasser and Serious Scents his Trademark by the purposeful dilution and infringement of Plaintiff Nasser Trademark rights. These two businesses were and are working collectively together to destroy Plaintiff Nasser Trademark, copyright and 1st use rights were completely extinguished by the purposeful collusion of Little Tree Air Freshener Co. and American Covers, Inc. competitors. This action continued unabated when Defendant Engineer bought out American Covers, Inc.

26. PLAINTIFF NASSER'S ABILITY TO FIGHT MULTIPLE LEGAL ASSAULTS UPON HIS BUSINESS:
 resulted in unwarranted litigation which brought frivolous civil actions which has continued to impact negatively on Plaintiff Nasser and his business.  In spite of the legal

interruptions to Plaintiff's Nasser's business his business continues to grow and prosper in spite of the costly frivolous litigation. This is because Plaintiff Nasser refuses to give up or quit until justice is done.

27. THE PROBLEM: MR. Nasser's former attorney while well-meaning explained to Mr. Nasser that because of the ongoing legal problems with the American Covers Inc. and the Little Tree Co. competitors and because the Trademark Board Examiner refusal to deny American Covers Inc. the trademark that it would be prudent to abandon the Two Grenade Air Freshener U.S. Registration No. 3508401. The attorney stated any hope of continued litigation was cost prohibitive to pursue both on going Trademark Cases simultaneously was unsustainable. My attorney's logic was simple because of the ongoing litigation with the Little Tree Co. was falsely and frivolously claiming confusion in the marketplace and held an exclusive right to the use of the grenade in the marketplace of air fresheners then the trademark board would not issue any other competitive grenade air fresheners.

28. THIS POSITION WAS BAD LEGAL ADVICE WHICH PROVED TO BE ABSOLUTELY INCORRECT.
The trademark board did wrongfully grant American Covers Inc. the right to use the single grenade air freshener, which, is in direct completion with Plaintiff Nasser and Serious Scents. The single grenade air freshener conflict is why we are here today in this court today. The trademark court examiner failed in their legal duty. The Trademark board examiner failed because of constant delays and misinterpretation facts and law by the well-meaning reviewing examiner at the trademark board. Mistakes happen the Federal Court and the present trier of fact can fix the problem and make straight what is crooked and demands correction.

29. IT IS A WELL SETTLED IN LAW IN FACT THAT ATTORNEYS MUST HAVE THE ABILITY TO CONTROL A CASE AND ITS OUTPUT AND OPERATION IBRAHIM AND SERIOUS SCENTS. Should not have to suffer for the well-meaning bad advice of his former attorney. Therefore, it is necessary to launch this complaint with the Federal

Court and ask for correction to avoid confusion in the marketplace and stop continued dilution of the use of the hand grenade air freshener in the marketplace

30. PLAINTIFF NASSER'S LEGAL POSITION IS SUPPORTED BY TWO PESOS, INC. V. TACO CABANA, INC., 505 US 763 - SUPREME COURT 1992 Addressing Reclaim rights to Trademark after waiving ownership, The issue of reclaim rights to Trademark in is mirrored in Two Pesos, Inc. v. Taco Cabana, Inc. is on point and addresses trade dress issues like the case at bar

31. OF A RESTAURANT (THE GRENADE AIR FRESHENER PLAINTIFF NASSER AND SERIOUS SCENTS with its bright color and distinct design and application in the Air Freshener Market) may be protected under § 43(a) of the Trademark Act of 1946 (Lanham Act), 60 Stat. 441, 15 U. S. C. § 1125(a) 765*765 (1982 ed.), based on a finding of inherent distinctiveness, without proof that the trade dress has secondary meaning.
Taco Cabana (Air Freshener of Ibrahim and Serious Scents) has a trade dress; taken as a whole, the trade dress is nonfunctional; the trade dress is inherently distinctive;

32. THE TRADE DRESS HAS NOT ACQUIRED A SECONDARY MEANING

33. (THE AIR FRESHENER MARKET) the alleged infringement creates a likelihood of confusion on the part of ordinary customers as to the source or association of the restaurant's goods or services. (*Ibrahim and Serious Scents. unique Grenade Air Freshener cannot be distinguished from the grenade air freshener products of American Covers Inc. who should have never been granted Trademark Status or Protection.) This was and is an error on the part of the Trademark Board even after repeated protest and submitting the* **Utah Court Judgement** *and request to the examiner for correction, which went, unanswered and ignored.*)

34. LETTER OF PROTEST MEMORANDUM Dated May 30, 2014. IN SO HOLDING, THE COURT: Followed precedent in the Fifth Circuit. In Chevron Chemical Co. V. Voluntary Purchasing Groups, Inc., 659 F. 2d 695, 702 (CA5 1981), The court noted that trademark law requires a demonstration of secondary meaning Only when the claimed trademark is not sufficiently distinctive of itself to identify the producer;

35. THE COURT HELD THAT THE SAME PRINCIPLES SHOULD APPLY TO PROTECTION OF TRADE DRESSES

. The Court of Appeals noted that this approach conflicts with decisions of other courts, particularly the holding of the Court of Appeals for the Second Circuit in Vibrant Sales, Inc. v. New Body Boutique, Inc., 652 F. 2d 299 (1981), cert. denied, 455 U. S. 909 (1982), that § 43(a) protects unregistered trademarks or designs only where secondary meaning is shown. SEE Chevron, at 702. The Court Granted Certiorari

• To resolve the conflict among the Courts of Appeals on the question
• Whether trade dress that is inherently distinctive (Which in a true fact in the case at bar.)
• Is protectable under § 43(a) ( Yes this remedy is available to Plaintiff Nasser )
• Without a showing that it has acquired secondary meaning. [6] 502 U. S. 1071 (1992). ( No secondary meaning was acquired or necessary  )
• We find that it is, and we therefore affirm. ( Plaintiff Nasser requests the identical relief from the trier of fact and the Federal Court. )

36. THE LANHAM ACT [7] WAS INTENDED TO MAKE" ACTIONABLE THE DECEPTIVE AND MISLEADING USE OF MARKS "and "to protect persons 768*768 engaged in . . . Commerce "against unfair competition." § 45, 15 u. S.C. § 1127.

37. SECTION 43(A) "PROHIBITS A BROADER RANGE OF PRACTICES THAN DOES § 32," Which applies to registered marks, ( Like The Case at bar  and offers legal benefits and protections to Plaintiff Nasser ) See: Inwood Laboratories, Inc. V. Ives laboratories, Inc. 456 u. S. 844, 858 (1982),

38. THIS IS COMMON LEGAL GROUND THAT § 43(A) PROTECTS QUALIFYING UNREGISTERED TRADEMARKS ( like Plaintiff Nasser ) and that the general principles qualifying a mark for registration Under § 2 of the Lanham Act are for the most part

applicable in determining whether an Unregistered Mark Is Entitled To Protection Under

§ 43(a).  See a. J. Canfield co. V. Honickman, 808 f. 2d 291, 299, n. 9 (ca3 1986);

See Thompson Medical co. V. Pfizer Inc., 753 f. 2d 208, 215-216 (ca2 1985).


39. A TRADEMARK IS DEFINED IN 15 U. S. C. § 1127 AS INCLUDING IN ORDER TO
BE REGISTERED:
1. "any word, ( Little Grenade Air Freshener )
2. Name, (Little Grenade Air Freshener Amor )
3. Symbol, (Little Grenade Air Freshener)
4. Or device (Little Grenade Air Freshener)
5. or any combination thereof" ( Little Grenade Air Freshener in Bright Colors Multiple
Fragrances )
6. Used by any person ( including the Plaintiff Nasser )
7. "to identify and distinguish his or her goods,
8. including a unique product, ( Little Grenade Air Freshener Fist of Its Kind, 1st Use,
1st Trade-marked),
9. From those manufactured. ( Little Grenade Air Freshener designed, created and
manufactured by Plaintiff Nasser )
10. Or sold by others and to indicate the source of the goods, even if that source is
unknown."

40.  A MARK MUST BE CAPABLE OF DISTINGUISHING THE APPLICANT'S GOODS

FROM THOSE OF OTHERS. § 1052. (In the matter at hand M. Nasser and Serious

Scents American Covers Inc.  and its new owner Defendant Energizer cannot and did

not ever satisfy the any of the foregoing legally needed requirements that could or

would distinguishing them and their knock off design and trademark infringement   of the

trade dress of Plaintiff Nasser's Grenade Air Freshener. Plaintiff Nasser's Grenade Air

Freshener has distinguished its self in the Grenade Air Freshener of others applicant's

goods.


41. MARKS ARE OFTEN CLASSIFIED IN CATEGORIES OF GENERALLY
INCREASING DISTINCTIVENESS;
following the classic formulation set out by Judge Friendly, they may be

(1) Generic; ( Plaintiff Nasser's Grenade Air Freshener satisfies the Generic Nature of

Air Fresheners because it shares a commonality in its use and application to give the end consumer a tool to address unwanted and un pleasant odors and smells by the use and application of his Air Freshener.)

(2) Descriptive; ( Plaintiff Nasser's Grenade Air Freshener satisfies the Descriptive test because it has taken an object of war and made it a playful item that allows the end users to experience pleasure instated of pain and fear. The End user enjoys peace and tranquility and no war )

(3) Suggestive; Plaintiff Nasser's Grenade Air Freshener satisfies the Suggestive test. Plaintiff used the negative Suggestive Nature of a weapon of war and allows the end user the ability to safely have hold and use a Grenade Air Freshener with no suggestive negative effects.

(4) Arbitrary; Plaintiff Nasser's Grenade Air Freshener satisfies the Arbitrary test which is based and defined as being determined by individual preference or convenience rather than by necessity or the intrinsic nature. Grenade Air Freshener satisfies something that is unspoken but acted upon arbitrary standard look feel and fragrance of the Grenade Air Freshener this satisfies arbitrary positive need to experience safety, comfort and while dealing with offensive odors."

 (5) Fanciful. Plaintiff Nasser's Grenade Air Freshener satisfies the Fanciful test because it was purposefully designed to be exotically ornamental rather than completely practical. Fanciful synonyms:  fit hand in glove with Plaintiff Nasser's Grenade Air Freshener.

42. THE GRENADE AIR FRESHENER IS: ornamental, it is exotic, it is fancy in design and color and fragrance, it is imaginative, it is affordable extravagance, the design concept and use fantastic.

43. ALL OF THE REQUIRED LEGAL ELEMENTS ARE FOUND IN PLAINTIFF NASSER'S GRENADE AIR FRESHENER LEGALLY NECESSARY TRAITS are satisfied and supporting case law. See Abercrombie & Fitch Co. v. Hunting World, Inc., 537 F. 2d 4, 9 (CA2 1976).

44. THE COURT OF APPEALS FOLLOWED THIS CLASSIFICATION AND PETITIONER ACCEPTS IT.

Brief for Petitioner 11-15. The latter three categories of marks, because their intrinsic nature serves to identify a particular source of a product ( *in the case at bar  the distinctive nature and unique design color and fragrance* ), are deemed inherently distinctive and are entitled to protection.

45. IN CONTRAST, GENERIC MARKS—those that "refe[r] to the genus of ( ubiquitous Pine Tree of defendant Little Tree ) which the particular product is a species," Park `N Fly, Inc. v. Dollar Park & Fly, Inc., 469 U. S. 189, 194 (1985), citing Abercrombie & Fitch, supra, at 9—*are not registrable as trademarks*. Park `N Fly, supra, at 194. 769*769 Marks, ( *Like Little Tree* ) which are merely descriptive of a product, are ***not inherently distinctive.*** When used to describe a product, they do not inherently identify a particular source, and ***hence cannot be protected.***

46. HOWEVER, DESCRIPTIVE MARKS MAY ACQUIRE THE DISTINCTIVENESS, WHICH WILL ALLOW THEM TO BE PROTECTED UNDER THE ACT. SECTION 2 OF THE LANHAM ACT:

provides that a descriptive mark ( *Like the little grenade air freshener* ) otherwise could not be registered under the Act may be registered if it "*has become distinctive of the applicant's goods in commerce.*" §§ 2(e), (f), 15 U. S. C. §§ 1052(e), (f). See Park `N Fly, supra, at 194, 196. This acquired distinctiveness is generally called "secondary meaning." See ibid; Inwood Laboratories, supra, at 851, n. 11; Kellogg Co. v. National Biscuit Co., 305 U. S. 111, 118 (1938). The concept of secondary meaning has been applied to actions under § 43(a). See, e.g., University of Georgia Athletic Assn. v. Laite, 756 F. 2d 1535 (CA11 1985); Thompson Medical Co. v. Pfizer Inc.,

47. THE GENERAL RULE REGARDING DISTINCTIVENESS IS CLEAR: AN IDENTIFYING MARK IS DISTINCTIVE AND CAPABLE OF BEING PROTECTED IF IT EITHER
(1) is Inherently Distinctive: Which, plaintiff Nasser's and Serious Scents Grenade Air Fresheners are

(2) Plaintiff Nasser Has Acquired Distinctiveness through secondary meaning of his Ibrahim and Serious Scents Grenade Air Fresheners. Restatement though 1st use, 1st copyright, and trademark and instinctiveness of design use and concept.

(3) Unfair Competition Plaintiff Nasser Grenade Air Fresheners, which is supported by the following legal string legal citations.

- See § 13, pp. 37-38, and
- Comment a (Tent. Draft No. 2, Mar. 23, 1990).
- Cf. Park `N Fly, supra, at 194.
- It is also clear that eligibility for protection exist for Plaintiff Nasser under § 43(a) depends on no functionality.
- See, e. g., Inwood Laboratories, supra, at 863 (White, J., concurring in 1987);
- First Brands Corp. v. Fred Meyers, Inc., 809 F. 2d 1378, 1381 (CA9 1987);
- Stormy Clime Ltd. v. ProGroup, Inc., 809 F. 2d 971, 974 (CA2 1987);
- Ambrit, Inc. v. Kraft, Inc., 812 F. 2d 1531, 1535 (CA11 1986);
- American Greetings Corp. v. Dan-Dee Imports, Inc., 807 F. 2d 1136, 1141 (CA3 1986).

48. IT IS, OF COURSE, ALSO UNDISPUTED THAT LIABILITY UNDER § 43(A) REQUIRES PROOF OF THE LIKELIHOOD OF CONFUSION.  The trier of fact need only compare the Defendants products side by side to see the likelihood of confusion, the direct Trademark and copyright infringement. This is support by the following case law:

- See, e.g., Brunswick Corp., supra, at 516-517;
- Ambrit, 770*770 supra, at 1535;
- First Brands, supra, at 1381;
- Stormy Clime, supra, at 974; American Greetings, supra, at 1141.

49. THE COURT OF APPEALS, FOLLOWING ITS PRIOR DECISION IN CHEVRON, HELD THAT TACO CABANA'S INHERENTLY DISTINCTIVE TRADE DRESS WAS ENTITLED TO PROTECTION DESPITE THE LACK OF PROOF OF SECONDARY MEANING.

It is this issue that is before Supreme Court agrees with its resolution by the Court of Appeals. There is no *persuasive reason to apply to trade dress a general requirement of secondary meaning*, which is at odds with the principles generally applicable to infringement, *suits under § 43(a).* This applies to the matter at issue. This informal

1  request for correction by the Trademark Board is based on the need of judicial
2  economy.

3
4  50. AMERICAN COVERS INC. TRADEMARK WAS GIVEN IN DIRECT VIOLATION OF
   THE LAW AND TRADE DRESS HELD BY:
5   Plaintiff Nasser and Serious Scents I by the examiner of the Trademark Board. This
6  has proven cause confusion in the market place and the dilution of Ibrahim and Serious
7  Scents Inc. Grenade Air Fresheners.
8

9  1- THE TRADEMARK EXAMINING ATTORNEY SHOULD SUSPEND ACTION ON
10  THE APPLICATION FOR THE REASON(S) STATED BELOW. See 37 C.F.R. §2.67;
    TMEP §§716 et seq.
11

12  51. PENDING CIVIL PROCEEDING: The pending civil proceeding below pertains to
13  (1) a registered mark that conflict with applicant's mark under Trademark Act Section
    2(d),
14
    (2) a mark in a pending application(s) that could conflict with applicant's mark under
15  Section 2(d) if it registers, and/or
16  (3) the registrability of applicant's mark. See 15 U.S.C. §1052; 37 C.F.R. §2.83; TMEP
17  §§716.02(a), (c)-(d), 1208 et seq. Because the civil proceeding(s) pertains to an issue
    that could directly affect whether applicant's mark can be registered, action on this
18  application is suspended pending termination of the civil proceeding(s). See 37 C.F.R.
19  §2.67; TMEP §§716.02(a), (c)-(d).
    - Application No(s). 85641084
20

21  52. THE USPTO WILL PERIODICALLY CONDUCT A STATUS CHECK OF THE
22  APPLICATION TO DETERMINE WHETHER SUSPENSION REMAINS
23  APPROPRIATE, and the trademark examining attorney will issue as needed an inquiry
24  letter to applicant regarding the status of the matter on which suspension is based.
25  TMEP §§716.04, 716.05. Applicant will be notified when suspension is no longer
26  appropriate. See TMEP §716.04.
27

28  53. SERIOUS SCENTS & MR. NASSER NOW BRINGS A COMPLAINT to addressing
29  the false and frivolous claim of American Covers Inc. that there was or ever could be
30  "Likelihood of Confusion" between the Mark of a Grenade Serious Scents, Inc. and
    Trademark Grenade American Covers Inc. This matter can be quickly addressed and

cleared up with the application of the history of the "Grenade Trademark." This Trademark of a Grenade was first created and used by Ibrahim Nasser 12-08-1993. Mr. Nasser enjoys protection of "first use claims" stating in 1993 US. Copyright Office of United States # VA 619 -296 LITTLE GRENADE "SERIOUS SCENTS "for first commercial use of "Grenade Image" used as an air fresher. Each party provides goods for freshening and fragrancing the air.

54. THE CRITICAL ISSUES IN THIS CASE ARE:
Whether Mr. Nasser prior use of the disputed Trademark in commerce was sufficient to earn it "trademark rights" through first use rights" and whether (and if so, to what extent) those rights legally trump the rights American Covers Inc. who later obtained use by registering the mark which the American Covers Inc. ignored. (All Dec 8,1993

55. US. COPYRIGHT OFFICE OF UNITED STATES # VA 619 -296 and June 1, 2012 U.S. Pending Application Serial Number 85641084 and 09-30-2008 Reg. No.3508401 whom the Examiner Jennifer Button ignoring Plaintiff Nasser complaints and letters of protest that Serious Scents own the Registration No. 3508401 dated 09-30-2008 that went un-heard, unread, and responded to for two years from American Covers, Inc. applied for their Application.)

56. MR. NASSER REGISTERED THE GRENADE AIR FRESHER, AND HIS PRIOR USE IN COMMERCE IS SUFFICIENT TO GIVE IT A RIGHT TO THE MARKS.
It is not in dispute that first used of Mr. Nasser use of the disputed marks in commerce before (in 1993, 2008 and 2012) before the American Covers Inc. registration of the Trademark Grenade.

57. THE COURT IS NEXT ASKED TO LOOK TO WHETHER SERIOUS SCENTS, INC / MR NASSER TRADEMARK ARE PROTECTABLE EITHER THROUGH INHERENT OR ACQUIRED DISTINCTIVENESS. The Court is directed to examine the mark are suggestive and, therefore it is inherently distinctive; accordingly, from those of the American Covers Inc. The Little Grenade Trademark has and did acquired distinctiveness is found in the great care. Mr. Nasser took extra care in ensuring that

there could never be any confusion between the Mr. Nasser's common use rights and his trademarked products.

58. MR. NASSER'S LAZAR LIKE FOCUS AND INTENT OF TO DEFINE FOR ANY VIEWER OF THE WHO WHAT, WHERE OF HIS BUSINESS OPERATION IS. Mr. Nasser was the first person anywhere ever to use the symbolism of a hateful, hurtful object of a Grenade Air fresher. Mr. Nasser completely up-ends the common public perception of a Grenade from a harmful object to a safe and playful image and impression of one that cleaned and refreshed the air in perfect safety.

59. AN EXAMINATION OF THE MR NASSER'S GRENADE MARK EXPLAINS EACH ELEMENT:
where it is created in San Diego CA. Who does Mr. Nasser serve the entire United States of America and overseas markets. What is Grenade Air Freshener's distinct function? It is a unique type and kind acquired secondary meaning, which it has in the design and air fresher market. This is because Mr. Nasser's Trademarks are entitled to protection by "First Use and Inherent or Acquired Distinctiveness. "

60. THE NASSER'S STATUS AS A THE SENIOR CREATOR AND USER OF THE GRENADE TRADEMARK.
He is entitled to the exclusive use of the Grenade Trademarks in its local and national and international geographic areas of operation. This is based on the fact that Mr. Nasser was and is a very aware as forward thinking and looking businessman who uses and sell air fresheners has demonstrated a complete understanding of trade mark law and its use. This is proven by the fact Mr. Nasser's other Trademarked business and American Covers Inc. ignoring the Trademark and first use rights of Mr. Nasser in the Trademarks at issue.

61. PROTECTABILITY OF THE MARK:
Classifying the Marks to prevail on a "Lanham Act Claim", a plaintiff must prove that it has a mark, which is entitled to protection. Gruner Jahr USA Pub. v. Meredith Corp., 991 F.2d 1072, 1075 (2d Cir. 1993). The protect ability of a mark depends, in large

measure, on how distinctive it is. There are four categories of distinctiveness—in ascending order:

(1) Fanciful or arbitrary,
(2) Suggestive,
(3) Descriptive, and
(4) Generic.

62. SUGGESTIVE AND ARBITRARY OR FANCIFUL Judge Friendly Famously Elucidated These Categories in Abercrombie & Fitch Co. v. Hunting World, Inc., 537 F.2d 4 (2d Cir. 1976). A generic mark "refers . . . to the genus of which the particular product is a species." Id. at 9; see also MCCARTHY § 12:1 (noting that APPLE would be a generic mark if used on fruit from an apple tree). A generic mark is never entitled to protection. See Abercrombie, 537 F.2d at 9.

63. IT IS UPON THIS WELL-DEFINED LEGAL BACKGROUND AMERICAN COVERS INC. WAS MISTAKENLY SUPPORTED BY AN ERROR AT TTBA.
American Covers Inc. filed an application U.S. Registration No. 4890647 on January 15, 2013. American Covers Inc. application should never have been approved by the Trademark and Patent Office. The mistaken error of The Attorney Examiner at the Trademark and Patent office is inexcusable because Mr. Nasser sent letters of protest directly to the Attorney Examiner but they were improperly and illegally ignored by the Trademark Attorney Examiner to the continuing legal and financial detriment of Mr. Nasser.

64. MR. NASSER'S REGISTRATION OF THE APPLIED-FOR MARK CANNOT AND SHOULD NOT BE REFUSED because of a the inappropriate, likelihood of confusion with the mark in U.S. Pending Application Serial Number 85641084 Trademark Act Section 2(d), 15 U.S.C. §1052(d); see TMEP §§1207.01 et seq.

65. AMERICAN COVERS INC. TRADEMARK IS CONTINUOUSLY IN VIOLATION OF THE TRADEMARK LAW: by its knowing and willing infringement on Mr. Nasser's Trademarks which it knew or should have known had rights of protection. Trademark Act Section 2(d) bars registration of an applied-for mark that so resembles a registered

mark that it is likely a potential consumer would be confused, mistaken, or deceived as to the source of the goods and/or services of the applicant and registrant. See 15 U.S.C. §1052(d). This perfectly describes the intentional acts and actions of American Covers Inc. Trademark violations.

66. A DETERMINATION OF LIKELIHOOD OF CONFUSION:
under Section 2(d) is made on a case-by case basis and the factors set forth in In re E. I. du Pont de Nemours & Co., 476 F.2d 1357, 1361, 177 USPQ 563, 567 (C.C.P.A. 1973) aid in this determination. Citigroup Inc. v. Capital City Bank Grp., Inc., 637 F.3d 1344, 1349, 98 USPQ2d 1253, 1256 (Fed. Cir. 2011) (citing On-Line Careline, Inc. v. Am. Online, Inc., 229 F.3d 1080, 1085, 56 USPQ2d 1471, 1474 (Fed. Cir. 2000)).

67. NOT ALL THE DU PONT FACTORS, HOWEVER, ARE NECESSARILY RELEVANT OR OF EQUAL WEIGHT, and any one of the factors may control in a given case, depending upon the evidence of record. Citigroup Inc. v. Capital City Bank Grp., Inc., 637 F.3d at 1355, 98 USPQ2d at 1260; In re Majestic Distilling Co., 315 F.3d 1311, 1315, 65 USPQ2d 1201, 1204 (Fed. Cir. 2003); see In re E. I. du Pont de Nemours & Co., 476 F.2d at 1361-62, 177 USPQ at 567.

68. IN THIS CASE, THE FOLLOWING FACTORS ARE THE MOST RELEVANT:
the remarkable similarity of the marks, similarity and nature of the goods and/or services, and similarity of the trade channels of the goods and/or services. See In re Viterra Inc., 671 F.3d 1358, 1361-62, 101 USPQ2d 1905, 1908 (Fed. Cir. 2012); In re Dakin's Miniatures Inc., 59 USPQ2d 1593, 1595-96 (TTAB 1999); TMEP §§1207.01 et seq.

69. IN ANY LIKELIHOOD OF CONFUSION DETERMINATION, two key considerations are similarity of the marks and similarity or relatedness of the goods and/or services. In re Aquamar, Inc., 115 USPQ2d 1122, 1126 (TTAB 2015) (citing Federated Foods, Inc. v. Fort Howard Paper Co., 544 F.2d 1098, 1103, 192 USPQ 24, 29 (C.C.P.A. 1976)); In

re Iolo Techs. LLC, 95 USPQ2d 1498, 1499 (TTAB 2010); see TMEP §1207.01. That is, the marks are compared in their entireties for similarities in appearance, sound, connotation, and commercial impression. In re Viterra Inc., 671 F.3d 1358, 1362, 101 USPQ2d 1905, 1908 (Fed. Cir. 2012) (quoting In re E. I. du Pont de Nemours & Co., 476 F.2d 1357, 1361, 177 USPQ 563, 567 (C.C.P.A. 1973)); TMEP §1207.01(b)-(b)(v).

70. ADDITIONALLY, THE GOODS AND/OR SERVICES ARE COMPARED TO; determine whether they are similar or commercially related or travel in the same trade channels. See Coach Servs., Inc. v. Triumph Learning LLC, 668 F.3d 1356, 1369-71, 101 USPQ2d 1713, 1722-23 (Fed. Cir. 2012); Herbko Int'l, Inc. v. Kappa Books, Inc., 308 F.3d 1156, 1165, 64 USPQ2d 1375, 1381 (Fed. Cir. 2002); TMEP §1207.01, (a)(vi).

71. HERE, THE MARKS OF MR. NASSER AND AMERICAN COVERS INC. TRADEMARK are in a category where the infringement on Mr. Nasser Trademark goes far beyond the description highly similar as each is a detailed depiction of a hand grenade has been with purposeful intent copied, pirated and hijacked in form, design, and function. American Covers Inc. Trademark is guilty of Trademark infringement against Mr. Nasser's original Hand Grenade Trademarks. American Covers Inc. goes way beyond the general term highly similar to an obvious outright knock-off of Mr. Nasser's Hand Grenade Trademark.

72. NEXT AT ISSUE IS THE MATTER OF ADDRESSING THE GOODS WHICH ARE HIGHLYRELATED IS NOT IN DEBATE BECAUSE:
it is fact that Mr. Nasser's original design had been copied by American Covers Inc. Trademark infringement. Mr. Nasser and American Covers Inc. provide goods for freshening and fragrance the air.

73. THUS, THERE IS EVIDENCE WHICH MOVES FAR BEYOND THE MORE GENERAL LIKELIHOOD OF A STRONG OF CONFUSION and registration to American Covers Inc. and Mr. Nasser's Trademarks. American Covers Inc. application must be denied. The trademark-examining attorney has, should and continuing suspending

action on the application for the reason(s) stated below. See 37 C.F.R. §2.67; TMEP §§716 et seq. American Covers Inc.

74. PENDING CIVIL PROCEEDING (S):
The pending civil proceeding(s) below pertains to
(1) A registered mark that conflicts with applicant's mark under Trademark Act Section 2(d),
(2) A mark in a pending application(s) that could conflict with applicant's mark under Section 2(d) if it registers, and/or
(3) The registrability of applicant's mark. See 15 U.S.C. §1052; 37 C.F.R. §2.83; TMEP §§716.02(a), (c)-(d), 1208 ET seq.

75. BECAUSE THE CIVIL PROCEEDING (S) PERTAINS TO AN ISSUE THAT COULD DIRECTLY AFFECT WHETHER APPLICANT'S MARK CAN BE REGISTERED, action on this application is suspended pending termination of the civil proceeding(s). See 37 C.F.R. §2.67; TMEP §§716.02(a), (c)-(d). Please See Opposition No(s). 91210658 Little Tree vs. Ibrahim Nasser / Serious Scents.

76. NOTICE AND REQUEST FOR ACOURT ACTION & CORRECTION

THE TRADEMARK EXAMINER: while well-meaning has misinterpreted and misapplied the pending
• Application of Serial Number 85641084 Ibrahim Nasser and Serious Scents
• This action was filed with the trademark board on June 1, 2012.
• This action was filed 1 year and 5 months before American Covers Inc. Made a filing
• Please see American Covers Inc. U.S. Registration No. 4890647
• Date of Filing of January 15, 2013
• Which followed was 1 year and 5 months after Ibrahim Nasser and Serious Scents filing.

77. THIS REQUEST FOR ADMINISTRATIVE ACTION IS NECESSITY BASED UPON THE FOLLOWING LAW, WHICH IS CONTROLLING: This law is plain in its meaning and application and no other inter patient need be applied or added.

78. DISCUSSION OF HISTORY OF PRIOR PENDING APPLICATION

In examining the application herein for conflicting marks, the examining attorney should merely apply the applicable Trademark Law. (It is obvious to even the casual examiner: that when a prior Mark was applied for which is a 100% duplicate of the look, feel and design of the previous Trademark filed 1 year and 5 months after the first applicant. Then the late filer has no standing, or right to be granted the mark of another. This is what has happened in the case at issue. Therefore, since the injury to the original Mark holder Serious Scents was cause not by the Mark Holder. But was the result of the violation of the law by incorrect conclusion of the Trademark Examiner. That mistake demands the Trademark Board to make the correction by resending its approval, which was issued in error.


79. THE LAW CONTINUES TO EXPRESS THE NECESSITY OF CARE IN GRANTING PENDING APPLICATIONS.

"In ex parte examination,


80. PRIORITY AMONG CONFLICTING PENDING APPLICATIONS

• Is Determined Based On

• The Effective Filing Dates of the Applications. (As has been defined in the foregoing text Mr. Nasser of Serious Scents did have an effective filing date, which preceded American Covers Inc. 1 year and 5 months.

• Without regard to whether the dates of use in a later-filed application. (Addressing date of use Mr. Nasser began designed, created, and developed and commercially marketed his Grenade Air Freshener in 1993 in the USA)

• Are earlier than the filing date or dates of use of an earlier-filed application. (The fact that American Covers Inc. can't come remotely close to the date of commercial use of the Grenade Air Freshener in 1993 in the USA by Mr. Nasser creates a legal bar against the issuance of the Grenade Air Freshener trademark to American Covers Inc. This establishes the improper issuing of the Trademark of Mr. Nasser to American Covers Inc., which demands immediate correction by the trademark board.

• Whether the applicant in a later-filed application (American Covers Inc.)

• (American Covers Inc. who does not legal own the registered Trademark which rightfully belongs to Mr. Nasser) Owns a registration of a mark that would be considered a bar to registration of the earlier-filed application. (Because of fist use and first to file by Mr. Nasser there is no bar to his continued right and title to have complete dominion and control over the Trademark issued by the Trademark Board in error.)

• Or whether an application was filed on the basis of use of the mark in commerce

•Or a bona fide intent to use the Mark in Commerce. See TMEP § 1208.01. (The law and its application herein by the clear and convincing evidence standard support Mr. Nasser's continuing and ongoing rights for dominion and control of the Grenade Air Freshener from being used by any and all others. This is necessary to avoid dilution and infringement by the Trademark Boards error.)

81. THIS IS FURTHER LEGALLY AMPLIFIED BY THE FOLLOWING:
In the instant matter
• The application herein Mr. Nasser,
• For U.S. Application No. 85641084 (Grenade design)
• Was filed on June 1, 2012.

82. A SEARCH OF THE RECORDS CONDUCTED REVEALED THAT U.S. APPLICATION NO. 85823376 (A GRENADE DESIGN) WAS FILED ON JANUARY 15, 2013.
Inasmuch as the grenade design for which American Covers Inc. U.S. Application No. 85823376 is similar to The grenade design in Mr. Nasser of Serious Scents U.S. Application No. 85641084,

83. THERE IS THE UNDISPUTABLE LIKELIHOOD OF MARKET CONFUSION WHEN USING THE REASONABLE PERSON STANDARD BETWEEN THESE MARKS: which are in direct conflict cannot be allowed to continue cause confusion in the market place in the same marketing channels. This becomes even more serious and injurious to Mr. Nasser and his product when that confusion is the result of Trademark Board Examiner administrative mistake and the failure search attorney for American Covers Inc. who knew or should have known of the existence of Mr. Nasser, his products first use and first application for Trademark protections. Since the "effective filing date" of Mr. Nasser

of U.S. Application No. 85641084 was filed a year and a five months before the "effective filing date" of American Covers Inc. applicant's U.S. Application No. 85823376 (June 1, 2012 vs. January 15, 2013),

Mr. Nasser's U.S. Application No. 85641084 had and continues to have controlling priority over U.S. Application No. 85823376 See TMEP § 1208.01.

84. IN CONCLUSION: For all of the above sited legal authorities and obvious copying of Mr. Ibrahim Nasser / Serious Scents Products Serious Scents is entitled to Trademark Protection and the application for approval of its U.S Application No. 86165479 Trademark of a Grenade. Ibrahim Nasser has suffered long and hard to protect its rights to its Trademark Defendant Energizer Brands II LLC. / American Covers Inc. as defined in the foregoing grenade with the appropriate legal references has established that once again Ibrahim Nasser Grenade is at risk in the market place and because of the extreme error of the Trademark Examiner the Trademark Board is requested to cause Defendant Energizer Brands II LLC. / American Covers Inc. to cancel their U.S. Application No. 85823376 and must be extinguished by the Trademark and Patent office. Based on all of the above sited legal authorities and the outright obvious copying of Mr. Nasser / Serious Scents, products is entitled to Trademark Protection and the Trademark of a Grenade. The registration by Defendant Energizer Brands II LLC. / American Covers Inc. must be extinguished.

85. VERIFICATION OF PLEADING:
The plaintiff swears the firms of foregoing is true and correct under penalty of perjury in the laws of the state of California and the federal laws of the of United States of America. Entered into on Sunday, May 8, 2018 I swear and affirm that the foregoing is true and correct under the penalty of perjury of the laws of the United States of America.

IBRAHIM NASSER
Plaintiff In-Pro-Per
P.O. Box 5626
Chula Vista, CA 91912

# Legal Points & Authorities

Cases

Statutes

," Park `N Fly, Inc. v. Dollar Park & Fly, Inc., 469 U. S. 189, 194 (1985), citing Abercrombie & Fitch, supra,..............21

. § 1052....................................................................................................................................................................19

. See 37 C.F.R. §2.67; TMEP §§716 et seq. ..........................................................................................................23

." §§ 2(e), (f), 15 U. S. C. §§ 1052(e), (f). See Park `N Fly, supra, at 194, 196.........................................................21

[6] 502 U. S. 1071 (1992)...........................................................................................................................................18

§ 43(a) of the Trademark Act of 1946 (Lanham Act), 60 Stat. 441, 15 U. S. C. ......................................................17

§ 43(a). See, e.g., University of Georgia Athletic Assn. v. Laite, 756 F. 2d 1535 (CA11 1985); ...............................21

§ 45, 15 u. S.C. § 1127..............................................................................................................................................18

A TRADEMARK IS DEFINED IN 15 U. S. C. § 1127 AS INCLUDING IN ORDER TO BE REGISTERED: ...............................19

a. J. Canfield co. V. Honickman, 808 f. 2d 291, 299, n. 9 (ca3 1986);.....................................................................19

Abercrombie & Fitch Co. v. Hunting World, Inc., 537 F. 2d 4, 9 (CA2 1976).........................................................20

Ambrit, 770*770 supra, at 1535;..............................................................................................................................22

Ambrit, Inc. v. Kraft, Inc., 812 F. 2d 1531, 1535 (CA11 1986);..............................................................................22

American Covers Inc. U.S. Registration No. 4890647 ............................................................................................14

American Greetings Corp. v. Dan-Dee Imports, Inc., 807 F. 2d 1136, 1141 (CA3 1986). ......................................22

Cf. Park `N Fly, supra, at 194. ..................................................................................................................................22

Comment a (Tent. Draft No. 2, Mar. 23, 1990).......................................................................................................22

First Brands Corp. v. Fred Meyers, Inc., 809 F. 2d 1378, 1381 (CA9 1987);............................................................22

First Brands, supra, at 1381;....................................................................................................................................22

In Chevron Chemical Co. V. Voluntary Purchasing Groups, Inc., 659 F. 2d 695, 702 (CA5 1981...............................18

Inwood Laboratories, Inc. V. Ives laboratories, Inc. 456 u. S. 844, 858 (1982),......................................................18

SECTION 43(A) "PROHIBITS A BROADER RANGE OF PRACTICES THAN DOES § 32.....................................................18

See § 13, pp. 37-38, and............................................................................................................................................22

See 15 U.S.C. §1052; 37 C.F.R. §2.83; TMEP §§716.02(a), (c)-(d), 1208 et seq...........................................................23

See 37 C.F.R. §2.67; TMEP §§716.02(a), (c)-(d). ......................................................................................................23

See ibid; Inwood Laboratories, supra, at 851, n. 11; Kellogg Co. v. National Biscuit Co., 305 U. S. 111, 118 (1938)..21

See, e. g., Inwood Laboratories, supra, at 863 (White, J., concurring in 1987........................................................22

See, e.g., Brunswick Corp., supra, at 516-517; ...........................................................................................22

Serious Scents. Trade Dress of Dec 8,1993 US. Copyright Office of United States # VA 619-296..............................14

Stormy Clime Ltd. v. ProGroup, Inc., 809 F. 2d 971, 974 (CA2 1987);........................................................22

Stormy Clime, supra, at 974; American Greetings, supra, at 1141. ........................................................22

*suits under § 43(a).* ...................................................................................................................22

the Second Circuit in Vibrant Sales, Inc. v. New Body Boutique, Inc., 652 F. 2d 299 (1981), cert. denied, 455 U. S. 909 (1982),............................................................................................................................18

Thompson Medical co. V. Pfizer Inc., 753 f. 2d 208, 215-216 (ca2 1985)........................................................19

Trademark Application Serial Number 85641084..............................................................................14

TWO PESOS, INC. V. TACO CABANA, INC., 505 US 763 - SUPREME COURT 1992 ........................................17

# Other Authorities

Res Ipsa Loquitur"...................................................................................................................... 12, 17













**KILPATRICK
TOWNSEND**
ATTORNEYS AT LAW

KILPATRICK TOWNSEND & STOCKTON LLP
www.kilpatricktownsend.com

1001 West Fourth Street
Winston-Salem, NC 27101-2400
t 336 607 7300  f 336 607 7500

direct dial 336 607 7482
direct fax 336 734 2656
bbryner@kilpatricktownsend.com

February 13, 2017

**VIA EMAIL TO balweh@hotmail.com
AND VIA U.S. MAIL**

Ibrahim Nasser
Post Office Box 5626
Chula Vista, CA  91912

Re:    *California Scents Co.*

Dear Mr. Nasser:

In addition to owning and operating the business of California Scents Co., my client Energizer Brands LLC also owns and operates the business of American Covers Inc. (collectively, "Energizer"). Consequently, Energizer has engaged our firm to represent it in connection with the Petition for Cancellation you filed concerning U.S. Trademark Reg. No. 4890647 (the "Cancellation Proceeding"), in addition to the matter raised in your letter to my partner, Alicia Grahn Jones, dated January 18, 2017 (the "CALIFORNIA SCENTS Matter").

With regard to the Cancellation Proceeding, without admission of any of the allegations contained in the papers you have submitted to the USPTO in the Cancellation Proceeding, and for settlement purposes only, Energizer is willing to contemplate an arrangement by which it surrenders for cancellation Reg. No. 4890647, which is on the Supplemental Register. This step would permit your pending applications against which Reg. No. 4890647 has been cited to proceed to registration. However, as consideration for doing so, Energizer requests that you and Serious Scents Inc. agree not to challenge Energizer's use of the design shown in Reg. No. 4890647 **provided** that use of that design is always accompanied by Energizer's DRIVEN trademark. Please advise if this arrangement is one you are willing to consider. In the meantime, we request a 30-day extension of Energizer's February 18, 2017 deadline to respond to your papers in the Cancellation Proceeding. Please let us know if you consent.

With regard to the CALIFORNIA SCENTS Matter, Energizer owns U.S. Trademark Reg. No. 1940353 for the mark CALIFORNIA SCENTS. That registration was filed March 30, 1993, giving Energizer nationwide constructive use of the CALIFORNIA SCENTS mark as of that date. That registration is in "Typed Drawing" format and, thus, does not cover any particular design. Therefore, Energizer and its predecessors were not required to continue using the design shown in the specimens originally or subsequently submitted in support of that registration, or any other particular design format, in order to maintain and renew that word-mark

Ibrahim Nasser
February 13, 2017
Page 2

registration. Energizer and its predecessors have not abandoned rights in the CALIFORNIA SCENTS word mark shown in Reg. No. 1940353. Therefore, Energizer's rights in the CALIFORNIA SCENTS mark are senior to your and/or Serious Scents Inc.s' rights in any SERIOUS SCENTS mark. Thus, to the degree your January 18th letter is alleging a likelihood of confusion arising from the parties' concurrent use the phrases CALIFORNIA SCENTS and SERIOUS SCENTS, it would be your junior use of SERIOUS SCENTS that would need to yield to Energizer's senior rights. However, Energizer may be willing to allow the marks to coexist in the marketplace.

Moreover, to our knowledge, you and/or Serious Scents Inc. have not used the SERIOUS SCENTS logo in the manner shown on page 2 of your January 18th letter. We believe that depiction is a mock-up, rather than a display actually used in the marketplace. Consequently, Energizer will not accede to the demands contained on page 7 of your January 18th letter.

We look forward to hearing from you about the Cancellation Proceeding, and trust that this response addresses your concerns about the CALIFORNIA SCENTS Matter. This response is without prejudice to any of Energizer's rights, remedies, or defenses, all of which are expressly reserved.

Sincerely,

William M. Bryner

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| AMERICAN COVERS, INC., <br><br> Plaintiff, <br><br><br> vs. <br><br><br> SERIOUS SCENTS, INC., <br><br> Defendant. | ORDER <br> AND <br> MEMORANDUM DECISION <br><br> Case No. 2:13-cv-01032 |

Plaintiff American Covers, Inc. (American Covers) filed its complaint in this case on November 18, 2013. In lieu of an answer, Serious Scents filed a Motion to Dismiss, or in the Alternative, for Transfer of Venue. With its motion, Serious Scents provided a declaration, explaining Serious Scents' lack of contacts with the state of Utah. On March 31, 2014, American Covers filed its opposition memorandum, along with a Motion for Jurisdictional Discovery. On June 23, 2014, American Covers also moved for leave to file an amended complaint, seeking to add a claim for tortious interference with economic relations.

The court held a hearing on the pending motions on August 6, 2014. After hearing the parties' arguments, the court took the motions under advisement. The court also ordered Serious Scents to file an amended motion to dismiss, along with additional declarations addressing the question of Serious Scents' sales in Utah. Serious Scents filed its amended motion, with the necessary declarations, on August 15, 2014. American Covers then filed a supplemental opposition memorandum. Having fully considered the parties' arguments and declarations and

the applicable legal authority, the court finds Serious Scents has insufficient contacts with Utah

to permit the exercise of personal jurisdiction. The court therefore grants the motions to dismiss.

## BACKGROUND

According to the complaint and declarations submitted by the parties,[1] American Covers

is a Utah corporation in the business of developing car accessories. The product at issue is a

grenade-shaped air freshener developed by American Covers and known as the DRIVEN AIR

FRESHENER. On or about September 3, 2013, Serious Scents, a California corporation, sent a

cease and desist letter to American Covers asserting that the DRIVEN AIR FRESHENER

infringed Serious Scents' copyrights and trademark rights relating to Serious Scents' own

grenade-shaped air freshener, known as the FIRST LITTLE GRENADE AIR FRESHENER.

American Covers, through its counsel, sent a response letter dated October 24, 2013, explaining

its defenses to the infringement claims. On or about October 29, 2013, Serious Scents sent a

second letter to American Covers, reasserting its claims and threatening legal action.

In light of Serious Scents' infringement claims, American Covers filed the complaint in

this case, seeking declaratory relief. Specifically, American Covers seeks a declaratory judgment

finding that Serious Scents does not hold trademark rights related to the FIRST LITTLE

GRENADE AIR FRESHENER, or if it does, those rights have not been infringed by American

Covers' DRIVEN AIR FRESHENER. American Covers also seeks a judgment that the DRIVEN

AIR FRESHENER does not infringe any copyrights owned by Serious Scents.

---

[1] See FDIC v. Oaklawn Apartments, 959 F.2d 170, 174 (10th Cir. 1992) (a district court has discretion to ascertain facts regarding jurisdictional questions by relying on declarations or by conducting an evidentiary hearing).

In response to American Covers' complaint, Serious Scents filed a motion to dismiss for lack of personal jurisdiction. In its motion, Serious Scents also requested a transfer of venue, as an alternative to dismissal. On March 31, 2014, American Covers filed its memorandum in opposition to the motion to dismiss, along with a motion for jurisdictional discovery. On June 23, 2014, American Covers also moved for leave to file an amended complaint. American Covers' proposed amended complaint alleges that on June 2, 2014, Serious Scents' president, Ibrahim Nassir, contacted Wal-Mart and told a Wal-Mart representative that American Covers was not legally entitled to sell the DRIVEN AIR FRESHENER to Wal-Mart. (First Am. Compl. ¶¶ 29-30, Docket No. 26-1.) Based on this call, American Covers seeks to add a claim against Serious Scents for tortious interference with economic relations.

With its motion for leave to amend its complaint, American Covers also filed a supplemental opposition to the motion to dismiss, arguing that the motion to dismiss was moot in light of the allegation that Mr. Nassir had improperly contacted Wal-Mart. In response, Serious Scents concedes it contacted Wal-Mart but asserts it merely called Wal-Mart headquarters in Arkansas to discuss the possibility of introducing Serious Scents' organic air freshener products into Wal-Mart stores. When the Wal-Mart representative stated that Wal-Mart already sells grenade-shaped air fresheners, Serious Scents explained that it has the only registered trademark for a grenade-shaped air freshener.

After hearing argument on Serious Scents' motion to dismiss at an August 6, 2014 hearing, the court took the motion and all other pending motions under advisement. The court also ordered Serious Scents to file an amended motion to dismiss with a supplemental declaration from Mr. Nassir and, if necessary, Serious Scents' wholesaler, addressing the

3

question of sales of the FIRST LITTLE GRENADE AIR FRESHENER made in Utah. Serious

Scents filed its amended motion to dismiss on August 15, 2014, and attached a supplemental

declaration from Mr. Nassir, along with declarations from representatives of Serious Scents' four

outside distributors.

The declarations of Mr. Nassir and the distributors confirm that Serious Scents does not

sell and has never sold any products in Utah. Serious Scents has never engaged the services of a

distributor in Utah, and none of its outside distributors has ever sold Serious Scents products in

Utah or directed any other party to make sales in Utah. Serious Scents is not registered to do

business in Utah and has never had a place of business, employees, or assets in Utah. Serious

Scents similarly has never owned, leased, or controlled property in Utah, paid taxes in Utah, or

maintained any phone or fax listings in Utah. Serious Scents does not have employees or other

agents regularly assigned to do business in Utah and has not entered into any contracts with a

person or company in Utah. Aside from this case, Serious Scents has never been sued in Utah.

Serious Scents' only alleged contacts with the state of Utah include the exchange of letters with

American Covers that led to American Covers' complaint in this case and the subsequent phone

call to Wal-Mart by Serious Scents' president.

## ANALYSIS

"The plaintiff bears the burden of establishing personal jurisdiction, but where, as here,

the issue is raised early on in litigation, based on pleadings (with attachments) and affidavits, that

burden can be met by a prima facie showing." Shrader v. Biddinger, 633 F.3d 1235, 1239 (10th

Cir. 2011). In determining whether the plaintiff has made its prima facie showing of jurisdiction,

the court must "resolve any factual disputes in the plaintiff's favor." Id.

4

To establish its prima facie showing of personal jurisdiction, "a plaintiff must show both that jurisdiction is proper under the laws of the forum state and that the exercise of jurisdiction would not offend due process." Intercon, Inc. v. Bell Atl. Internet Solutions, Inc., 205 F.3d 1244, 1247 (10th Cir. 2000). In Utah, "'any set of circumstances that satisfies due process will also satisfy [Utah's] long-arm statute.'" Soma Med. Int'l v. Standard Chartered Bank, 196 F.3d 1292, 1298 (10th Cir. 1999) (quoting SII MegaDiamond, Inc. v. Am. Superabrasives Corp., 969 P.2d 430, 433 (Utah 1998)). As a result, the court will proceed to analyze whether the exercise of jurisdiction over Serious Scents satisfies federal due process standards.

"[T]o exercise jurisdiction in harmony with due process, defendants must have 'minimum contacts' with the forum state, such that having to defend a lawsuit there would not 'offend traditional notions of fair play and substantial justice.'" Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d 1063, 1070 (10th Cir. 2008) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). A defendant's contacts with the forum state may give rise to either general or specific personal jurisdiction. In this case, even accepting American Covers' allegations as true, the court finds that Serious Scents lacks the necessary minimum contacts with Utah for the court to exercise either general or specific jurisdiction over Serious Scents. Having made this determination, the court need not address the issue of whether the exercise of personal jurisdiction would offend traditional notions of fair play and substantial justice.

## I.      General Jurisdiction

American Covers first argues that Serious Scents has the necessary minimum contacts to justify the court's exercise of general personal jurisdiction over Serious Scents. A court has general jurisdiction over a defendant if the defendant has continuously, systematically, and

5

purposefully availed itself of the privilege of conducting activities within the forum state, such

that the defendant should reasonably anticipate being haled into court there. Asahi Metal Indus.

Co. v. Superior Crt., 480 U.S. 102, 109 (1987); Burger King Corp. v. Rudzewicz, 471 U.S. 462,

474 (1985). The Tenth Circuit, citing to a Utah Court of Appeals decision, has explained that the

following factors are relevant to the issue of general personal jurisdiction:

> Whether the corporate defendant is
> 1. engaged in business in this state;
> 2. licensed to do business in this state;
> 3. owning, leasing, or controlling property (real or personal) or assets in this state;
> 4. maintaining employees, offices, agents, or bank accounts in this state;
> 5. present in that shareholders reside in this state;
> 6. maintaining phone or fax listings within this state;
> 7. advertising or soliciting business in this state;
> 8. traveling to this state by way of salespersons, etc.;
> 9. paying taxes in this state;
> 10. visiting potential customers in this state;
> 11. recruiting employees in the state;
> 12. generating a substantial percentage of its national sales through revenue generated from in-state customers.

Soma Med. Int'l, 196 F.3d at 1295-96 (quotations omitted).

With its motion to dismiss, Serious Scents submitted the declaration of its president,

Ibrahim Nassir. The declaration explains that Serious Scents has never sold its products in Utah,

had a place of business in Utah, or had any employees in Utah. Mr. Nassir also states that he has

never been to Utah. When it filed its amended motion to dismiss, Serious Scents provided

additional information in a supplemental declaration from Mr. Nassir and in four additional

declarations from representatives of Serious Scents' outside distributors. These declarations

confirm that Serious Scents does not sell and has never sold any products in Utah. Serious Scents

has never engaged the services of a distributor in Utah, and none of its outside distributors has

sold Serious Scents products in Utah or directed any other party to make sales in Utah. Serious Scents is not registered to do business in Utah and has never had a place of business, employees, or assets in Utah. Serious Scents has never owned, leased, or controlled property in Utah, paid taxes in Utah, or maintained any phone or fax listings in Utah. Serious Scents does not have employees or other agents regularly assigned to do business in Utah and has not entered into any contracts with a person or company in Utah. Aside from this case, Serious Scents has never been sued in Utah. Serious Scents essentially has no presence in the state of Utah.

Serious Scents' only alleged contacts with the state of Utah are the exchange of letters with American Covers that led to American Covers' complaint in this case and the subsequent phone call to Wal-Mart by Serious Scents' president. These isolated communications are not sufficient to show that Serious Scents continuously, systematically, and purposefully availed itself of conducting business within Utah. As a result, American Covers has not shown that the court may exercise general jurisdiction over Serious Scents. See id. at 1296 (filing a small number of UCC financing statements and recording several instruments in Utah were insufficient to subject the defendant to general jurisdiction); Far West Capital, Inc. v. Towne, 46 F.3d 1071, 1076-77 (10th Cir. 1995) (defendants' phone calls with the plaintiff and ten to twenty faxes and letters held insufficient to establish minimum contacts).

## II.     Specific Jurisdiction

To establish the minimum contacts necessary for specific jurisdiction, a plaintiff must first show that the out-of-state defendant has "'purposefully directed' its activities at residents of the forum state, and second, that the plaintiff's injuries must 'arise out of' defendant's forum-related activities." Dudnikov, 514 F.3d at 1071(quoting Burger King, 471 U.S. at 472). In

7

Dudnikov, the court elaborated on this standard by analyzing the Supreme Court's holding in Calder v. Jones, 465 U.S. 783 (1984), and concluded that a defendant purposefully directs activities at the forum state when (1) the defendant commits an intentional act, (2) "expressly aimed at the forum state," (3) with the knowledge that the injury will be primarily felt in the forum state. Dudnikov, 514 F.3d at 1072.

For the first element of this test, American Covers alleges, in its complaint, that Serious Scents sent an initial cease and desist letter to American Covers, a Utah corporation, and then followed with a second letter threatening litigation after American Covers disputed Serious Scents' claims of infringement. In its proposed amended complaint, American Covers also alleges that Serious Scents called Wal-Mart to assert a complaint against American Covers. These allegations are sufficient to show an intentional act by Serious Scents.

But mere allegations of intentional acts are not sufficient to establish minimum contacts with the forum state. Under the second step in the minimum contacts analysis, which asks if a defendants actions were expressly aimed at the forum state, "the mere allegation that an out-of-state defendant has tortiously interfered with contractual rights or has committed other business torts that have allegedly injured a forum resident does not necessarily establish that the defendant possesses the constitutionally required minimum contacts. Instead, in order to resolve the jurisdictional question, a court must undertake a particularized inquiry as to the extent to which the defendant has purposefully availed itself of the benefits of the forum's laws." Far West Capital, 46 F.3d at 1079. This particularized inquiry "focuses more on a defendant's intentions—where was the 'focal point' of its purposive efforts." Dudnikov, 514 F.3d at 1075. To be expressly aimed at the forum state, a defendant's actions must do more than individually

8

target a known forum resident. Id. at 1074 n.9. Rather, "the forum state itself must be the focal point of the tort." Id. (quotation omitted).

Analyzing the issue of purposeful availment, the court in Far West Capital recognized that the parties had engaged in three different phases of negotiation, which included exchanging phone calls with the plaintiff in Utah, mailing drafts of a proposed lease to the plaintiff in Utah, and sending approximately twelve faxes to the plaintiff in Utah. 46 F.3d at 1073, 1076-77. The court noted that "[i]t is well established that phone calls and letters are not necessarily sufficient in themselves to establish minimum contacts." Id. at 1077. Because the court found "no evidence that defendants' alleged torts had any connection to Utah beyond plaintiff's corporate domicile," the court found insufficient contacts to establish personal jurisdiction. Id. at 1080.

Even taking the facts as alleged by American Covers as true, Serious Scents did not purposefully avail itself of doing business in Utah or take any actions purposefully directed at Utah. American Covers' initial complaint merely alleges that Serious Scents sent a single cease and desist letter to American Covers in Utah and then followed with a second letter which threatened litigation. Two letters to a Utah corporation are not sufficient to show that Serious Scents has purposefully availed itself of the benefits of doing business in Utah, especially under Far West Capital, where the Tenth Circuit found much more extensive communication and correspondence insufficient to establish minimum contacts.

American Covers also argues that it should be given leave to amend its complaint to allege additional contacts between Serious Scents and Utah—namely, American Covers alleges that Serious Scents' president, Ibrahim Nassir, reached out to Wal-Mart to assert a complaint against American Covers and did so understanding the call would damage American Covers'

9

reputation and relationship with Wal-Mart.[2] Relying on <u>Dudnikov</u>, American Covers argues this phone call by Serious Scents is sufficient to establish minimum contacts. The court disagrees.

As explained in <u>Dudnikov</u>, "'something more' than foreseeability [is] required to establish personal jurisdiction." 514 F.3d at 1077. In <u>Dudnikov</u>, the defendants not only foresaw potential harm to the plaintiffs' eBay business in the forum state; the defendants also knew eBay had a set policy that resulted in an automatic cancellation any time an infringement complaint was made about a particular auction. So the defendants knew that, under eBay's policy, the plaintiffs' auction would be cancelled as soon as they asserted a claim of infringement. The defendants in fact "d[id] not dispute that they *intended* to cause the cancellation of plaintiffs' auction." <u>Id.</u> (emphasis in original).

In contrast, American Covers has not alleged that Serious Scents knew or intended a specific result in making its phone call to Wal-Mart headquarters in Arkansas. Even accepting American Covers' allegation that the call was made for the purpose of reporting alleged infringement, American Covers has not alleged that Wal-Mart has a set policy for responding to such calls, that such calls automatically result in a product being discontinued from sale at Wal-Mart, or that Serious Scents had any specific understanding of what the result would be in making the call. Although Serious Scents may have understood that its call may have potential

---

[2] Serious Scents disputes American Covers' allegations related to the Wal-Mart call and specifically asserts that it made the call to Wal-Mart as an innocent sales call and only raised the issue of American Covers' alleged infringement when Wal-Mart said it already sold a grenade-shaped air freshener. The court resolves this factual dispute in American Covers' favor. But, as explained below, even accepting American Covers' version of events, the call to Wal-Mart does not create the minimum contacts with the state of Utah that would be necessary for the court to exercise personal jurisdiction over Serious Scents.

effects on American Covers in Utah, those effects were "no more than foreseeable side-effects." Id. In addition, American Covers has not alleged that the call in fact had any negative effect on its relationship and/or sales with Wal-Mart.

Even if Serious Scents individually targeted American Covers knowing that American Covers was a Utah business, American Covers must make a prima facie showing that Utah, as the forum state, was the focal point of the alleged tort. Dudnikov, 514 F.3d at 1074 n.9. Serious Scents' phone call to Wal-Mart headquarters in Arkansas does not establish purposeful action directed at Utah, even when combined with Serious Scents' letters to American Covers in Utah. Without conduct showing purposeful direction at Utah as the forum state, Serious Scents does not have the necessary minimum contacts to establish specific jurisdiction.

Having determined that American Covers has not met its burden to show minimum contacts that would establish either general or specific personal jurisdiction over Serious Scents, the case must be dismissed for lack of personal jurisdiction.

## III.    Motion for Jurisdictional Discovery

With its opposition to the motion to dismiss, American Covers also moved for leave to conduct discovery on the issue of jurisdiction. While a trial court has discretion to allow limited jurisdictional discovery, "a court may deny jurisdictional discovery where the plaintiff has failed to meet its burden of making a threshold prima facie case of personal jurisdiction." Alphagen Biotech v. Langoost Enters., LLC, No. 2:13-CV-15 TS, 2013 WL 2389792, at *8 (D. Utah May 30, 2013) (unpublished).  The questions related to personal jurisdiction were fully addressed in the parties' briefing and declarations. Because American Covers has not met its burden to make a prima facie showing of personal jurisdiction, the request for jurisdictional discovery is denied.

11

**IV.    Motion for Leave to File Amended Complaint**

American Covers also moved for leave to amend its complaint to add a claim for tortious interference with economic relations. As explained above, even when the court accepts the added allegations in the amended complaint, Serious Scents does not have the requisite minimum contacts to establish personal jurisdiction. The motion for leave to amend is, therefore, denied.

## CONCLUSION

Because Serious Scents has insufficient minimum contacts to permit the court's exercise of personal jurisdiction over it, the court rules on the pending motions as follows:

1.    Serious Scents' Motion to Dismiss, or in the Alternative, for Transfer of Venue (Docket No. 13) and its First Amended Motion to Dismiss, or in the Alternative, for Transfer of Venue (Docket No. 36) are GRANTED to the extent those motions both seek dismissal based on lack of personal jurisdiction. Serious Scents' alternative request for transfer of venue is DENIED as moot.

2.    American Covers' Motion for Jurisdictional Discovery (Docket No. 20) is DENIED.

3.    American Covers' Motion for Leave to File First Amended Complaint (Docket No. 26) is DENIED.

DATED this 1ˢᵗ day of October, 2014.

                                    BY THE COURT:

                                    *Tena Campbell*

                                    TENA CAMPBELL
                                    U.S. District Court Judge

<u>PROOF OF SERVICE BY MAIL</u>

Case No.: 3-17-CV-0863 BTM (MDD)

I ROBY LISTER Did Personally Serve the Following Response To Supplement Pleading To Energizer Brands II LLC. Dated May 9, 2018 On The Below name defendants attorney of record via US MAIL. I am not a party to this cause of action. I am over the age of 18 years and reside in Chula Vista CA.

**Served Via US Mail The Following:**

Energizer Brands II LLC.
Kilpatrick Townsend & Stockton LLP
Nancy L. Stagg
12730 High Bluff Dr. Suite 400
San Diego, CA 92130

Car Freshner Co.
Davis Wright Termaine LLP
Scott R. Commerson
865 South Figueroa St. Suite 2400
Los Angeles, CA 90017-2566

Julius Sämann Ltd.
MUNCY, GEISSLER, OLDS & LOWE, P.C.
Roberta S. Bren
4000 Legato Road, Suite 310
Fairfax, VA 22033

I did personally served the offices of the above attorneys for the above-named defendant. On May 9, 2018.
I Roby Lister personally placed such envelope(s) with postage by Us Mail first class mailed to the above attorney's offices and I did cause all other defendants to be served via US. Mail with the response of the Plaintiff as defined herein. I swear and affirm that the foregoing is true and correct under the laws of the United States of America.

On May 9, 2018

_____
ROBY LISTER
356 Roosevelt St.
Chula Vista, CA 91910
619-253-9624